S. H. McCRARY et al., Respondents, v. MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 27, 1903.

1. **Trial Practice:** INSTRUCTIONS: FORM OF VERDICT: DEFENDANT'S DUTY. Where the court gives a form of verdict for the plaintiff it is proper for it to give one for the defendant, and it is the defendant's duty to ask it if wanted; and the court's failure to give the form, of its own motion, will not warrant a reversal.

2. **Common Carriers:** LIVE STOCK: DELAY: SHRINKAGE. The mere fact that live stock may arrive in the market on scheduled time will not relieve the carrier of liability for delay along the route whereby the heat has killed some, and caused shrinkage in others, of a shipment of hogs.

3. ——: ——: DELIVERY: DELAY. Where hogs are loaded
by direction of carrier's agent just prior to the scheduled arrival of
the train, they are thereby delivered and the duty of moving them
without unreasonable delay is imposed on the carrier.

Appeal from Howard Circuit Court.—*Hon. John A.
Hockaday,* Judge.

AFFIRMED.

*Geo. P. B. Jackson* for appellant.

(1) The evidence wholly failed to prove the case
stated in the petition. There was no delay in the ship-
ment. The hogs were loaded in Fayette on the even-
ing of September 26, 1901, to reach East St. Louis and
go upon the market of September 27. This they did,
and having reached their destination, and having been
sold at the time intended, and as early as they could
after the time they were loaded, there was no delay and
no ground of complaint or right of recovery for that
reason. (2) There was no allegation of failure to
water or cool the hogs, nor of failure to furnish con-
veniences for such purpose, while the only attempt to
show any cause for the loss of the hogs was that they be-
came overheated from neglect to water them. This was
alleging one cause of action and proving another, which
was improper. Wright v. Fonda, 44 Mo. App. 634.
(3) The evidence shows there was no loss. (4) The
court's instruction as to the form of the verdict was
unfair and was calculated to prejudice the jury in
favor of plaintiffs.

*A. W. Walker* for respondents.

(1) Plaintiffs' statement contains no allegation,
and there is no contention, that the hogs were late in
reaching the market. The ground of the action is that
defendant negligently failed to well and safely trans-
port the hogs and unreasonably delayed them at certain
points, causing them to become overheated and six to

suffocate and die. The statement is amply sufficient
to advise the defendant of the nature of plaintiff's claim
and to bar another action on the same grounds. That
is all that is required before a justice of the peace. Terti
v. Ins. Co., 76 Mo. App. 42. (2) The proximate cause
of the hogs becoming overheated was the long delay in
starting, and it was certainly not necessary for the
plaintiffs to allege that the defendant might have
counteracted the effects of the delay by throwing water
on the hogs or by unloading them and allowing them
to go to the water in the pens. No written answer or
reply, nor any formal pleading, is required before a
justice. After the statement all such pleadings are
made orally. (3) All the evidence shows that the de-
lay was negligent and unreasonable and caused the hogs
to become overheated and damaged. (4) When the
hogs were loaded and the car was sealed by defendant's
agent, the delivery to the defendant was complete. Ma-
son v. Railroad, 25 Mo. App. 479. (5) The evidence
as to the loss and damage was clear and conclusive.

BROADDUS, J.—This is a suit originating in a
justice's court to recover damages to a carload of hogs
shipped by plaintiff over defendant's railroad, alleged
to have been caused by unreasonable delay, thereby re-
sulting in their becoming overheated so that six of them
died and the balance were injured by shrinkage in
weight and made less marketable. It was shown that
on the 26th day of September, 1901, the plaintiff had
ninety-three head of hogs in defendant's pens at its·
station in Fayette, Howard County, Missouri, which
were loaded upon defendant's cars by direction of de-
fendant's agent at about four o'clock p. m. of that day
in good condition, after having been well watered. The
hogs were to be carried to the city of St. Louis to be
there delivered to the connecting carrier for East St.
Louis, Illinois. The usual time for the arrival and de-
parture of the train on which the hogs were to be carried

was about 3 o'clock p. m. On this day, however, it did not arrive until 5 o'clock and then did not leave until about 7 o'clock. The hogs arrived at Franklin Junction at about 8:40 o'clock, where J. E. Crews, one of the plaintiffs, saw them and he testified that they were in bad condition at that time, being overheated and some of them down with others piling over them. After considerable delay they left Franklin Junction and arrived in St. Louis the next morning, where they were turned over to the connecting carrier which delivered them without unnecessary delay to their destination in East St. Louis, at which latter point six of them were found dead. Those were disposed of for $4.20; and the residue were sold on the market for about the highest market price for such hogs. The evidence showed that the shrinkage on the animals was about fourteen or fifteen hundred pounds, whereas the usual shrinkage would have been only from four to six hundred pounds. On the day of shipment the weather was unusually warm. The evidence tended to show that the injury was caused by the animals being kept in the cars on the track while at Fayette station; and that hogs are more liable to become overheated while in cars standing on the track than while in motion. Defendant's excuse for the delay of the train and the detention at Fayette station was that it was occasioned by what are called "hot boxes" on new cars. The evidence was that there were some new freight cars in the train at Fayette station loaded with coal, which caused the delay at that point. It was also claimed that it was a part of the contract of shipment that plaintiff should load and water the hogs, and that one of the plaintiffs, or some one for them, should accompany the train in order to water and look after the stock. The said contract, however, so far as the latter stipulation is concerned, was not entered into; this was shown by the fact that certain blank forms in the contract which were required to be filled in and signed before it became operative, were left blank.

At the close of plaintiff's evidence, defendant offered a demurrer to the case as made out, which the court overruled. And at the conclusion of all the evidence the defendant renewed its demurrer, which was again overruled. The court at the instance of defendant gave eight instructions covering every conceivable theory of the case raised by the evidence. At the instance of the plaintiffs the court gave an instruction upon their theory of the case, also one giving the form of a verdict in the event the jury should find for the plaintiffs. The jury returned a verdict for $100 in favor of plaintiffs.

If the plaintiffs were entitled to recover under the facts there can be no valid objection made to the instruction given on their behalf. And as the defendant got all that it asked in the way of law, except that plaintiffs were not entitled to recover, there is left only one important question to review.

It is true, defendant contends that the court ought not to have given the instruction for plaintiff for a proper form of verdict without giving a form for a verdict for the defendant; but we have no doubt if it had asked one that was suitable the court would have given it—judging by the liberality already extended in that respect. But it seems that defendant did not deem it necessary to do so, and we think it was a matter of small consequence—not sufficient, at most, to warrant a reversal. Besides, it was the duty of defendant to ask such instruction if it wanted it given.

The remaining contention is, that the plaintiffs wholly failed to prove the case as stated in the petition. It is true, there is and could be no complaint that the hogs did not arrive in St. Louis on time. But the plaintiffs are not claiming anything on that ground, their claim being for injuries sustained by the hogs because of their being delayed en route. That because they were delayed at Fayette station and other places they became overheated, causing six of them to die and the

rest to shrink beyond what was usual. The evidence seems to sustain the allegation.

As has been shown, the cars after the hogs had been loaded were allowed by defendant to remain stationary in the heat for several hours beyond the usual time, and that when they arrived at Franklin Junction the hogs were in bad condition, suffering from heat. There is no doubt but what it is true that hogs in a car standing on a track on a hot day are much more liable to become overheated than when the train is moving. Every one has knowledge of this physical law. The defendant seems to think that if the hogs arrived at their destination on schedule time there could be no damages by reason of delay. It is true, there could be no damages for mere delay, and none such are claimed, but it is claimed that the injury occurred by reason of delay on the way, as stated, in suffering the animals to remain stationary in the heat when they should have been moving. And as to whether the delay caused by the "hot boxes" was necessary under the circumstances, was submitted to the jury at defendant's request; and the verdict upon that issue is conclusive against defendant.

The watering and loading the hogs as directed by defendant's agent just prior to the schedule time for the arrival of the train upon which they were to be shipped, was a delivery under the terms of the contract, whereupon the duty of moving them without unreasonable delay was imposed upon defendant. The verdict of the jury is in effect a finding that the delay was unnecessary and that plaintiff's hogs were damaged thereby.

Finding no error the cause is affirmed. All concur.